# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RICKIE SPARKS,              )
                            )
    Plaintiff,         )
                            )  Case No. 15-CV-4402
    v.                 )
                            )  Judge Robert W. Gettleman
WEXFORD HEALTH SOURCES, INC.,)
CHARLES CLAGETT, M.D., and  )
NICOLETTE DUFFIELD,         )
                            )
    Defendants.        )

## **MEMORANDUM OPINION AND ORDER**

When plaintiff Rickie Sparks was playing basketball at Sheridan Correction Center, he took a jump shot and heard his knee pop. A few days later in his cell, he reached for his crutches and fell, further injuring his knee. Plaintiff was diagnosed with a ruptured patella tendon with associated avulsion fracture. His prison doctor, defendant Charles Clagett, sent him to surgery. Although the surgery was successful, plaintiff was unhappy with Dr. Clagett's choice of post-surgery pain medication: Motrin (ibuprofen) and Tylenol (acetaminophen)—both over-the-counter, non-prescription pain medications—rather than Norco (hydrocodone and acetaminophen), a prescription opioid painkiller. Plaintiff sued Dr. Clagett (and two other defendants who have since been dismissed) under 42 U.S.C. § 1983, alleging that Dr. Clagett was deliberately indifferent to his medical needs.

Dr. Clagett moves for summary judgment. Because the parties agree that non-prescription, non-opiod medications can effectively manage a patient's pain, and because there is no evidence that Dr. Clagett's choice of medications was anything but a reasonable exercise of

professional judgment, given plaintiff's 30-year history of severe opioid abuse, no reasonable jury could find that Dr. Clagett was deliberately indifferent to plaintiff's medical needs. Dr. Clagett's motion for summary judgment is therefore granted.

## BACKGROUND

The facts are taken from the parties' L.R. 56.1 statements and from the depositions and exhibits on file. Plaintiff was injured on February 26, 2014, playing basketball at Sheridan Correction Center, when he heard his knee pop after taking a jump shot. That same day, Dr. Clagett, a physician specializing in internal medicine, admitted plaintiff for 23-hour observation and prescribed him Toradol (an anti-inflammatory, non-steroidal pain medication) and Tylenol.

The next day, Dr. Clagett examined plaintiff's knee and, after observing swelling, deformity, edema, and decreased range of motion and strength, diagnosed plaintiff with left knee trauma. He gave plaintiff crutches, prescribed a bandage for his knee, ordered an x-ray, prescribed Motrin and Tylenol, told plaintiff to return as needed, and sent plaintiff back to his unit for bed rest.

On March 3, 2014, plaintiff was preparing to leave his unit to attend his scheduled X-ray on his knee when he slipped and fell while reaching for his crutches. This further injured his knee. He was taken to the Northwestern Medicine Valley West Hospital and was treated by Dr. James Federnic, an emergency room physician. After diagnosing plaintiff with a complete rupture of the patella tendon with associated avulsion fracture, Dr. Federnic prescribed Norco, Motrin, and Tylenol. He later testified that although a patellar tendon rupture is not very painful once stabilized, an avulsion fracture is more painful.

Dr. Clagett saw plaintiff the next day. After finding that plaintiff had a left patella injury, he recommended that plaintiff be transferred to the emergency department for further evaluation and prescribed Norco. He then discussed plaintiff's case at a collegial review and approved plaintiff for orthopedic surgery for his ruptured patellar tendon. Dr. Clagett later testified that he prescribed Norco because at that time he did not yet know the extent of plaintiff's knee injury and he wanted to manage his symptoms aggressively.

Over the next ten days, Dr. Clagett saw plaintiff three more times. He ordered pre-operative labs, told plaintiff to ice and apply compression to his knee, and gave plaintiff a knee immobilizer. The last visit pre-surgery visit was on March 14, six days before surgery. That day, Dr. Clagett renewed plaintiff's prescription of Norco and further prescribed MS Contin (morphine), an opioid painkiller. He later testified that he added MS Contin because plaintiff was in pain and he wanted to manage that pain until he better understood the condition of plaintiff's knee.

The next day, a nurse later identified as Mary Grennan entered a new order to discontinue the Norco and MS Contin, and to start Motrin only. A nurse may not override a doctor's orders. Dr. Clagett testified that he did not order this change in prescriptions, that he did not know who did, and that he does not recall seeing the new script entered into plaintiff's charts.

Two days later, Dr. Ankur Behl, the orthopedic surgeon who would be operating on plaintiff's knee, prescribed Norco for plaintiff post-surgery. Dr. Behl later testified he prescribed Norco because a patellar rupture is exquisitely painful from the moment of injury through surgery, and the surgery itself is significantly painful.

On March 20, 2014, at Valley West Hospital, Dr. Behl successfully repaired plaintiff's patellar tendon. He prescribed Norco, and ibuprofen as needed. On the instruction form,

3

Dr. Behl wrote "Refills: NONE."  He did not order refills for three reasons: (1) he was not sure if he could do so legally; (2) pain generally subsides by the end of the original prescription; and (3) he likes to know when his patients run out of pills.  Dr. Behl later testified that he did not have any knowledge that plaintiff had a 30-year history of substance abuse; that there is always a concern for potential addiction with narcotics; that it is proper to consider a patient's history of substance abuse when choosing a patient's pain management; and that prescribing Norco to patients with a history of substance abuse is reasonable, so long as it was well-monitored.

After the surgery, plaintiff was sent back to Sheridan Correction Center and with crutches and Dr. Behl's prescription for Norco.  Dr. Clagett saw plaintiff the next day.  He gave plaintiff a knee immobilizer, referred plaintiff to physical therapy, and prescribed Motrin to relieve pain and reduce inflammation.  Plaintiff took the Motrin and, at some time, told Dr. Clagett that it was not working.  Dr. Clagett saw plaintiff again a few days later, who said again that the Motrin was not working.  Dr. Clagett increased the Motrin dose to 800 milligrams and added Tylenol.  Dr. Clagett later testified that he knew that plaintiff had entered prison with a heroin addiction and that he wanted to minimize plaintiff's exposure to opioids.

The timeline below summarizes the key facts:

| Date | Event |
| --- | --- |
| February 26 | Plaintiff injures his knee; Dr. Clagett sees plaintiff and prescribes him Toradol and Tylenol |
| February 27 | Dr. Clagett sees plaintiff and diagnoses him with left knee trauma; he prescribes Motrin and Tylenol, gives plaintiff crutches, prescribes a bandage for his knee, and orders an x-ray |
| March 3 | Plaintiff falls and further injures his knee; an emergency room physician (Dr. Federnic) diagnoses him with a rupture of the patella tendon with associated avulsion fracture and prescribes Norco, Motrin, and Tylenol |

4

| | |
|---|---|
| March 4 | Dr. Clagett sees plaintiff, prescribes Norco, and approves plaintiff for orthopedic surgery |
| March 7 | Dr. Clagett sees plaintiff, orders pre-operative labs, and tells plaintiff to apply compression to his knee, ice his knee, and use a knee immobilizer |
| March 14 | Dr. Clagett sees plaintiff, renews plaintiff's Norco prescription, and further prescribes MS Contin |
| March 15 | Plaintiff's Norco and MS Contin prescription is discontinued and replaced by Motrin by a nurse (Mary Grennan); plaintiff receives no Norco after this day |
| March 17 | Plaintiff is prescribed Norco by his surgeon (Dr. Behl) for after surgery |
| March 20 | Plaintiff undergoes surgery; surgeon gives plaintiff a femoral nerve block (an anesthetic) and prescribes Norco and ibuprofen |
| March 21 | Dr. Clagett sees plaintiff, gives him a knee immobilizer, and prescribes Motrin; plaintiff takes Motrin and tells Dr. Clagett that he still felt pain |
| March 24 | Dr. Clagett sees plaintiff, who tells him that the Motrin was not working; he increases plaintiff's Motrin prescription from 600 mg to 800 mg and prescribes Tylenol |

## **DISCUSSION**

Dr. Clagett moves for summary judgment. Summary judgment is proper if no material fact is genuinely disputed and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is genuinely disputed if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a reasonable jury could find for the plaintiff, the court views the evidence in the light most favorable to him, but the plaintiff must present specific facts showing that there is a genuine issue for trial. Aguilar v. Gaston-Camara, 861 F.3d 626, 630

(7th Cir. 2017). An inference that relies on "speculation or conjecture" is not enough. Id. at 630–31.

A prison doctor violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if he acts with deliberate indifference to his serious medical needs. Conley v. Birch, 796 F.3d 742, 746 (7th Cir. 2015). To establish a deliberate indifference claim, the prisoner must show that, (1) he suffered an objectively serious risk of harm, and (2) the prison doctor acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). Because Dr. Clagett does not dispute that plaintiff's risk of harm was objectively serious, summary judgment here turns on the second element—whether Dr. Clagett acted with a subjectively culpable state of mind.

The culpable state of mind element "entails something more than mere negligence," Farmer v. Brennan, 511 U.S. 825, 835 (1994); "it approaches intentional wrongdoing," Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015). The prison doctor must knowingly disregard a substantial risk of serious harm to the prisoner, Farmer, 511 U.S. at 837, and "evidence that some medical professionals would have chosen a different course of treatment" is not enough, Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016) (emphasis in original). On the other hand, a prisoner can reveal a doctor's culpable mind with evidence that there was obvious risk from a particular medical treatment, that the doctor persisted in a course of treatment known to be ineffective, or that the doctor's decision departed so radically from "accepted professional judgment, practice, or standards" that a reasonable jury could infer that the doctor's decision was not based his professional judgment. Id.

Plaintiff argues that a reasonable jury could find that Dr. Clagett knowingly disregarded an excessive risk of harm based on two theories: (1) Dr. Clagett's failure to prescribe Norco in the five days before plaintiff's surgery; and (2) Dr. Clagett's failure to prescribe Norco in the four days after plaintiff's surgery. Neither theory succeeds—the first is untimely and the second is without any evidence that prescribing Motrin over Norco was a substantial departure from accepted professional standards.

**1.    Dr. Clagett's failure to prescribe Norco in the five days before plaintiff's surgery**

Defendant argues that plaintiff's first theory is based on allegations missing from his second amended complaint, and that the court therefore should refuse to consider it. The court agrees. Plaintiff does not allege in that complaint that Dr. Clagett discontinued Norco on March 15. And he confirmed in his deposition that the any discontinuation on March 15 was not part of his suit, which he said was based on, (1) Dr. Clagett's decision to send plaintiff back to his cell on February 27 (a decision plaintiff does not now contest on summary judgment), and (2) Dr. Clagett's decision to end plaintiff's Norco prescription after his surgery. When asked by Dr. Clagett's lawyer if he would be surprised that Dr. Clagett had discontinued Norco on March 15, plaintiff responded, "Would I be surprised? I don't know. Because he was still giving them to me. They were still giving me Norco before my surgery. And I don't remember him stop giving me nothing on the 15th. And if he did, I don't understand why he did."

Plaintiff cannot constructively amend his complaint by raising on summary judgment a new factual theory, Chessie Logistics Co. v. Krinos Holdings, Inc., 867 F.3d 852, 860 (7th Cir. 2017), especially a factual theory that he disclaimed in his deposition. The court therefore declines to consider whether a reasonable jury could find that Dr. Clagett knowingly disregarded an excessive risk to plaintiff's condition in the five days before plaintiff's surgery.

**2.  Dr. Clagett's failure to prescribe Norco in the four days after plaintiff's surgery**

To defeat summary judgment, plaintiff must show that a reasonable jury could find that Dr. Clagett knowingly disregarded an excessive risk to his medical condition by prescribing not Norco, as prescribed by Dr. Behl, but Motrin and Tylenol instead. Plaintiff does not dispute that there is no right or wrong as to what medicine to use for pain; that different physicians treat pain differently; that differences in treatment can be consistent with the standard of care; that opioids are not the only option for pain management; that a patient with a history of opioid abuse may be difficult to treat with opioids because they risk becoming re-addicted and because they may have built up a high tolerance; that he has a 30-year history of severe opioid abuse; that his doctors should consider his history of opioid abuse; that he suffered a normal amount of pain after his surgery; that non-prescription medication can effectively manage a patient's pain; and that after his surgery, Dr. Clagett prescribed him Motrin and Tylenol.

Given those concessions, plaintiff cannot defeat summary judgment. He must show that the decision to prescribe non-prescription Motrin and Tylenol instead of Norco was "such a substantial departure from accepted professional judgment" as to demonstrate that Dr. Clagett's decision was not based on his professional judgment at all. McGee v. Adams, 721 F.3d 474, 481 (7th Cir. 2013). Plaintiff has not made such a showing. He offers two reasons for why a reasonable jury could find that Dr. Clagett failed to exercise his professional judgement, but neither reason is persuasive.

First, plaintiff argues that in determining that plaintiff's pain was well-controlled after his surgery, Dr. Clagett did not know whether plaintiff had received Norco. Plaintiff apparently suggests that Dr. Clagett's assumption that plaintiff was taking only his prescribed medications was improper. After all, if plaintiff somehow had access to and was secretly taking

unauthorized Norco, then Dr. Clagett's determination rested on a false premise. But it was reasonable for Dr. Clagett to assume that plaintiff was not secretly taking the same medication that he complained of not receiving, and no evidence suggests that plaintiff was so doing. A reasonable jury could not find for plaintiff based on this theory.

Second, plaintiff argues that Dr. Clagett's refusal to take instructions from a specialist—Dr. Behl, the surgeon who operated on plaintiff's knee—went beyond differences of medical opinion and amounted to knowingly disregarding an excessive risk of harm. This theory does plaintiff no better. Dr. Behl himself testified that based on what he knew, it would be reasonable for a doctor to prescribe a non-narcotic pain medication to a patient with a history of heroin abuse. When asked if he would "have any opinions critical of Dr. Clagett if instead of giving [plaintiff] Norco he gave him Motrin for pain control," Dr. Behl's answer (with the caveat that he would need all the information) was "no." Nor did Dr. Clagett need to defer to Dr. Behl anyway. See Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1073–74 (7th Cir. 2012) (affirming summary judgment for a prison doctor who treated a prisoner's chronic pain with ibuprofen and Tylenol instead of Oxycontin—an opioid painkiller prescribed by the prisoner's outside doctor—reasoning that "the prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination").

Other doctors agree that Motrin was enough. Dr. Federnic testified that Norco, Motrin, or Tylenol were all acceptable to treat plaintiff's pain and that he would "[a]bsolutely" expect plaintiff's doctor at Sheridan to determine the "appropriate treatment," which was "up to the physician's discretion." And Dr. Ann Davis (the physician who treated plaintiff after he left the care of Dr. Clagett) testified that she would have no criticisms if Dr. Clagett "looked at the patient and [Motrin was] what he thought was appropriate," because "it's up to his medical

9

judgment." Plaintiff offers no contrary evidence—from a doctor or from anyone else—that would allow a reasonable jury to find that prescribing Motrin over Norco was a substantial departure from accepted professional standards.

## **CONCLUSION**

Defendant Dr. Charles Clagett's motion for summary judgment (Doc. 140) is granted. The court extends its appreciation to attorneys Jennifer Johnson, Kevin Kearney, Michael McDonough, Nikolai Guerra, and Reginald Cloyd III, from the law firm of Tressler LLP. They were recruited by the court to represent plaintiff pro bono and they ably discharged their assignment.

**ENTER:** **February 19, 2019**

_____
**Robert W. Gettleman**
**United States District Judge**